FILED
COURT OF APPEALS
DIVISION II

2014 DEC 16 AM 8:33

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44771-1-II |
| Respondent, | |
| v. | |
| KIRK MICHAEL HERNANDEZ, JR., | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — A jury found Kirk Michael Hernandez, Jr. guilty of attempted first degree robbery. Hernandez appeals arguing that (1) the trial court erred by refusing to instruct the jury on the lawful use of force in defense of others, (2) the accomplice liability instruction is constitutionally overbroad, (3) the "substantial step" jury instruction relieved the State of its burden of proof, and (4) the trial court erred by imposing legal financial obligations without determining Hernandez's ability to pay. The trial court did not err by refusing to give the lawful use of force in defense of others instruction because lawful use of force in defense of others is not a defense to attempted robbery. Hernandez's challenges to the accomplice liability statute and "substantial step" jury instruction lack merit. And, we decline to address Hernandez's challenge to his legal financial obligations. Finally, in his statement of additional grounds (SAG)[1] Hernandez alleges that he received ineffective assistance of counsel. Hernandez's ineffective assistance of counsel claim fails. We affirm.

---

[1] RAP 10.10.

## FACTS

In September 2012, Patrick Wade was drinking at the Hideaway in Vancouver, WA. He was paying for all his drinks in cash because he had recently cashed his paycheck. When he was outside smoking, two Hispanic males, later identified as Hernandez and Rene Castillo, approached him and showed him a bag of methamphetamine. Wade told them he would think about it, but he did not purchase any methamphetamine at that time. A short time later, a Hispanic woman, later identified as Hernandez's girlfriend Stephanie Torres, approached Wade. Torres stated that she was associated with Hernandez and Castillo, and she could sell him some methamphetamine. Wade agreed to buy $20 of methamphetamine from Torres.

Wade and Torres left the Hideaway and walked across the street to perform the drug transaction. After the drug transaction was complete, Wade saw Hernandez and Castillo jump over a nearby fence. Hernandez punched Wade in the head, and Torres demanded that Wade empty his pockets. But, Wade started backing away and then Hernandez, Castillo, and Torres turned and walked away. Wade called 911 and reported the incident. Hernandez's punch left a mark that hurt for a few days after the incident.

The State charged Hernandez with one count of attempted first degree robbery as both a principle and an accomplice. At trial, Wade testified to the facts stated above. Torres also testified at trial. Her testimony was consistent with Wade's up to the point she and Wade crossed the street. Torres testified that after she and Wade crossed the street, Hernandez and Castillo walked up and joined them. When the drug deal was complete, Wade reached out and groped her breast. When Hernandez saw Wade grope her breast, he shoved Wade back away from Torres. Torres denied that she took any money from Wade's pockets.

Hernandez testified at trial. His testimony was also consistent with Wade's up to the point when Wade left the bar with Torres. He testified that he followed Wade and Torres across the street because he wanted to keep an eye on Torres. After the drug deal was completed, he saw Wade grope Torres's breast. Hernandez testified that when he saw Wade grope Torres he felt disrespected, told Wade to "What the—keep your hand off my bitch," and then he hit Wade. 1B Report of Proceedings (RP) at 239. He denied attempting to take money from Wade and denied that Torres told Wade to empty his pockets.

Hernandez requested that the trial court instruct the jury on the lawful use of force in defense of others. The trial court declined to give Hernandez's proposed instruction. The trial court instructed the jury that:

> To convict the defendant of the crime of Attempted Robbery in the First Degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1)    That between September 20, 2012 and September 21, 2012, the defendant or an accomplice did an act that was a substantial step toward the commission of Robbery in the First Degree;
> (2)    That the act was done with the intent to commit Robbery in the First Degree; and
> (3)    That the act occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Suppl. Clerk's Papers (SCP) at 45. The jury instructions defined "substantial step" as "conduct that strongly indicates a criminal purpose and that is more than mere preparation." SCP at 43. Hernandez did not object to either instruction.

3

The jury found Hernandez guilty of attempted first degree robbery. The trial court imposed a standard range sentence. The trial court also imposed legal financial obligations, including $1,500 for "[f]ees for court appointed attorney and trial per diem." Clerk's Papers (CP) at 10. The trial court found that "the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein." CP at 8. Hernandez did not object to either the legal financial obligations or the trial court's finding that he had the present or likely future ability to pay legal financial obligations. Hernandez appeals.

## ANALYSIS

A.    LAWFUL USE OF FORCE IN DEFENSE OF OTHERS JURY INSTRUCTION

Hernandez argues that the trial court erred by refusing to instruct the jury on the lawful use of force in defense of others. We disagree. In *State v. Lewis*, 156 Wn. App. 230, 239, 233 P.3d 891 (2010), we held that the lawful use of force in self-defense is not a defense to robbery because robbery does not require an intent to inflict bodily harm that can be negated by the lawful use of force.

Hernandez seems to argue that, because he was charged with attempted first degree robbery, rather than a completed first degree robbery, there is an intent element that can be negated by the lawful use of force. Hernandez is mistaken.

Attempted first degree robbery requires that the State prove that Hernandez acted with the intent to commit first degree robbery. RCW 9A.28.020(1). The elements of first degree robbery are (1) the defendant committed the robbery and (2) in the course of the robbery the defendant

4

inflicts bodily injury. RCW 9A.56.200.[2] Based on the reasoning that this court employed in *Lewis*, we see no reason to address attempted robbery any differently than robbery. An attempted first degree robbery does not require that the defendant intend to inflict bodily injury. Rather, the defendant had to intend to commit robbery and in the course of intending to commit robbery cause bodily injury. Like in *Lewis*, attempted first degree robbery does not require the specific intent to inflict bodily injury; therefore, there is no intent element that can be negated by a claim of lawful use of force. 156 Wn. App. at 239.

And, to the extent Hernandez argues the defense of others is distinguishable from self-defense, we disagree. The purpose of the defense of lawful use of force—to negate the intent to inflict bodily harm—does not change based on whether the force was used in defense of self or in defense of others. *See* RCW 9A.16.020(3). Accordingly, we reject Hernandez's claim that the trial court erred by refusing to instruct the jury on the lawful use of force in defense of others.

---

[2] Robbery is defined as:

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

RCW 9A.56.190.

B.     ACCOMPLICE LIABILITY STATUTE

Hernandez argues that the accomplice liability statute is unconstitutional because it is overbroad and punishes protected speech. We have considered, and rejected, the argument that the accomplice liability statute is overly broad. In *State v. Coleman*, 155 Wn. App. 951, 960-61, 231 P.3d 212 (2010), *review denied*, 170 Wn.2d 1016 (2011), Division One of this court held that the accomplice liability instruction was not unconstitutionally broad. And we explicitly adopted Division One's holding in *State v. Ferguson*, 164 Wn. App. 370, 376, 264 P.3d 575 (2011), *review denied*, 173 Wn.2d 1035 (2012).

Hernandez also argues that *Coleman* and *Ferguson* were wrongly decided because they did not apply the appropriate standard that the United States Supreme Court articulated in *Brandenberg v. Ohio*, 395 U.S. 444, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969). We disagree.[3] We reject Hernandez's argument and follow this court's established precedent holding that the accomplice liability statute is not unconstitutionally broad.

C.     "SUBSTANTIAL STEP" INSTRUCTION

Hernandez argues that the trial court's instruction on the definition of "substantial step" relieved the State of its burden to prove all elements of the crime beyond a reasonable doubt. The trial court gave the jury the following instruction regarding a "substantial step":

> A substantial step is conduct that strongly indicates a criminal purpose and that is more than mere preparation.

---

[3] In *Ferguson*, we explicitly held that the accomplice liability statute is not unconstitutional because "it does not forbid the mere advocacy of law violation that is protected under the holding of *Brandenburg*." 164 Wn. App. at 376.

SCP at 43. Hernandez argues that the jury instruction relieved the State of its burden to prove all elements of the crime beyond a reasonable doubt because it uses the term "indicate[s]" rather than "corroborate[s]," and because it uses the term "criminal purpose" instead of "the crime." Br. of Appellant at 19-20.

As an initial matter, Hernandez failed to object to the "substantial step" jury instruction. Generally, a party may not raise an issue for the first time on appeal. RAP 2.5(a). However, an appellant may raise an issue for the first time on appeal if the error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). An alleged error to a jury instruction may be a manifest error affecting a constitutional right that may be raised for the first time on appeal. *State v. Stearns*, 119 Wn.2d 247, 250, 830 P.2d 355 (1992). But, "[a]s long as the instructions properly inform the jury of the elements of the charged crime, any error in further defining terms used in the elements is not of constitutional magnitude." *Stearns*, 119 Wn.2d at 250. Here, the challenged instruction is a definitional instruction—it further defines the element of substantial step. Therefore, Hernandez may not raise a challenge to the "substantial step" jury instruction for the first time on appeal.[4]

D.    LEGAL FINANCIAL OBLIGATIONS

Hernandez claims that the trial court erred by imposing costs for his court-appointed attorney without making a finding that Hernandez has the present or future ability to pay.

---

[4] Even if we were to address Hernandez's claim on the merits, his claim would fail under our recent decision in *State v. Davis*, 174 Wn. App. 623, 635-38, 300 P.3d 465, *review denied*, 178 Wn.2d 1012 (2013). In *Davis*, we explicitly considered and rejected both of Hernandez's arguments; specifically, Hernandez's assertion that *Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978), requires the jury instruction to use the word "corroborate" rather than "indicate" and that *Roberts*, 142 Wn.2d 471, 14 P.3d 713 (2000), requires the jury instruction to state with particularity the crime rather than criminal purpose. 174 Wn. App. at 636-37. Hernandez does not offer any argument that we did not consider and reject in *Davis*.

Hernandez attempts to frame this issue as a violation of his right to counsel, but his argument belies this assertion. Hernandez is correct that the trial court may not impose court-appointed attorney costs unless it finds that the defendant has the present or future ability to pay. *Fuller v. Oregon*, 417 U.S. 40, 45, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974); RCW 10.01.160(3). But the trial court did find that Hernandez had the present or future ability to pay.

Hernandez appears to argue that the trial court's finding is not supported by substantial evidence. However, under *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *review granted*, 178 Wn.2d 1010 (2013), Hernandez may not raise a challenge to the trial court's finding that he has the present or future ability to pay for the first time on appeal. And, as we explained in *State v. Lundy*, 176 Wn. App. 96, 108, 308 P.3d 755 (2013), Hernandez's claim is not ripe for review until the State attempts to collect the ordered legal financial obligations. Accordingly, Hernandez's claim that the trial court erred by imposing court-appointed attorney costs is not properly before us, and we decline to consider it.

E.      SAG—INEFFECTIVE ASSISTANCE OF COUNSEL

Hernandez alleges that he received ineffective assistance of counsel because his defense counsel breached the terms of his contract agreement with Clark County. Specifically, Hernandez argues that, under the contract, his defense counsel was not qualified to represent him on charges which are considered a "strike offense" under the Persistent Offender Accountability Act (POAA).[5] SAG at 13-14. Hernandez also alleges that his defense counsel had a conflict of interest

---

[5] RCW 9.94A.570, 030(37).

8

because, under the terms of his contract, his defense counsel would have been required to repay collected fees paid for handling a case for which his defense counsel was unqualified.

Assuming, without deciding, that Hernandez's contentions regarding trial counsel's contract are correct, Hernandez's claim lacks merit because his case is not a POAA case. Under RCW 9.94A.570 "a persistent offender shall be sentenced to a term of total confinement for life without the possibility of release." A "persistent offender" is an offender who:

(a)(i) Has been convicted in this state of any felony considered a most serious offense; and

(ii) Has, before the commission of the offense under (a) of this subsection, been convicted as an offender on at least two separate occasions, whether in this state or elsewhere, of felonies that under the laws of this state would be considered most serious offenses and would be included in the offender score under RCW 9.94A.525; provided that of the two or more previous convictions, at least one conviction must have occurred before the commission of any of the other most serious offenses for which the offender was previously convicted; or

(b)(i) Has been convicted of: (A) Rape in the first degree, rape of a child in the first degree, child molestation in the first degree, rape in the second degree, rape of a child in the second degree, or indecent liberties by forcible compulsion; (B) any of the following offenses with a finding of sexual motivation: Murder in the first degree, murder in the second degree, homicide by abuse, kidnapping in the first degree, kidnapping in the second degree, assault in the first degree, assault in the second degree, assault of a child in the first degree, assault of a child in the second degree, or burglary in the first degree; or (C) an attempt to commit any crime listed in this subsection (37)(b)(i); and

(ii) Has, before the commission of the offense under (b)(i) of this subsection, been convicted as an offender on at least one occasion, whether in this state or elsewhere, of an offense listed in (b)(i) of this subsection or any federal or out-of-state offense or offense under prior Washington law that is comparable to the offenses listed in (b)(i) of this subsection. A conviction for rape of a child in the first degree constitutes a conviction under (b)(i) of this subsection only when the offender was sixteen years of age or older when the offender committed the offense. A conviction for rape of a child in the second degree constitutes a conviction under (b)(i) of this subsection only when the offender was eighteen years of age or older when the offender committed the offense.

RCW 9.94A.030(37). A POAA case is a case in which the offender will be sentenced as a persistent offender if convicted of the offense charged. Here, Hernandez was not sentenced as a persistent offender; therefore, his case was not a POAA case. Hernandez's ineffective assistance of counsel claim is predicated on the mistaken assertion that his case is a POAA case; therefore, his ineffective assistance of counsel claim fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will instead be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Sutton, J.